# United States District Court
## District of Minnesota

| | |
|---|---|
| Kiara Gallagher,<br><br>    Plaintiff,<br><br>v.<br><br>Gurstel, Staloch & Chargo, P.A.,<br><br>    Defendants. | Court file no. _____<br>(___/___)<br><br>**Complaint**<br><br>**JURY TRIAL DEMANDED** |

## Jurisdiction

1. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o ("**FDCPA**"), and Minnesota's wrongful garnishment statute, Minn. Stat. § 571.90.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state-law claims.

3. Venue is proper because the acts and transactions occurred in Minnesota, Plaintiff resides in Minnesota, and Defendant transacts business in Minnesota.

## Parties

4. Plaintiff Kiara Gallagher is a natural person who resides in Minneapolis, Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5. Defendant Gurstel, Staloch & Chargo, P.A., is a Minnesota corporation and

collection agency operating from an address of 401 North 3rd Street, Suite 590, Minneapolis, MN 55401, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## Factual Allegations

*Background*

6. In 2001, Plaintiff incurred a financial obligation that was primarily for personal, family, or household purposes that went into default for late payment and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, an MBNA account in the alleged amount of $4,338.45, that Plaintiff used to make personal purchases of food, clothing, and shelter-related items ("the debt").

7. Sometime in 2005, Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendant for collection.

8. Thereafter, Plaintiff started receiving collection communications from Defendant and Defendant initiated garnishment proceedings against Plaintiff in an attempt to collect the debt.

9. These actions were in violation of multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), 1692f(5), and 1692f(6), among others, and Minnesota's wrongful garnishment statute, Minn. Stat. § 571.90.

*Prior settlement*

10. On or about October 26th, 2005, Plaintiff entered into an agreement to cure the debt via a stipulation and confession of judgment with Cavalry Portfolio Services, LLC ("Cavalry"), a copy of which is attached as **Exhibit A**.

11. The stipulation provided for a settlement with Cavalry in the amount of $4,000. Plaintiff was to make one payment of $2,000 due by November 15th, 2005, and to pay the balance in ten monthly installments of $200. Each installment was due on or before the 15th of each month.

12. Plaintiff and Calvary agreed to a total of 11 payments.

13. Plaintiff made ten payments, totaling $3,800.

14. Due to her own misunderstanding of the terms of the stipulation, Plaintiff believed she had satisfied the terms of the settlement after ten payments, and did not make the eleventh payment. See Affidavit of Kiara Gallagher, attached as **Exhibit B**.

15. The stipulation provided that, in the event of default, Cavalry would be allowed to obtain a judgment against Plaintiff for $4,338.45, plus interest at a rate of 6% per annum from and after April 29th, 2002, plus service costs in the amount of $30.00, Cavalry's costs and disbursements incurred, *less any payments made by Plaintiff*.

16. On or about October 4th, 2006, Defendant notified Plaintiff that the

September payment was past due in a letter attached as **Exhibit C**.

17. On or about May 17th, 2007, Defendant served Plaintiff with an affidavit of default, attached as **Exhibit D**, which was signed by Michael Johnson.

18. Johnson's affidavit of default requested judgment in the amount of $5,215.38.

*Wrongful Garnishment*

19. The first notice Plaintiff had of the affidavit of default was on July 17th, 2007, when she discovered her Wells Fargo bank account had been emptied.

20. Plaintiff immediately contacted Wells Fargo, who provided a telephone number that belonged to Defendant.

21. Plaintiff called the number and spoke to a woman named "Sharlin." Plaintiff asked how it could be legal for Defendant to take over $4,000 from her account. In response, Sharlin laughed at Plaintiff.

22. Thereafter, Plaintiff received copies of two garnishment summonses from her bank, Wells Fargo, one for $1,908.94, and one for $2,139.66, attached as **Exhibits E and F**, respectively.

23. In addition to the funds that were garnished, Plaintiff incurred $102 in insufficient funds charges immediately after the garnishment.

24. Plaintiff called Defendant on July 20th and spoke with Sharlin once more. Plaintiff told Sharlin that the amount Defendant garnished was incorrect.

25. Sharlin claimed the bank held only $2,300 and told Plaintiff to call Wells Fargo instead.

26. Plaintiff contacted Wells Fargo, who confirmed Defendant instructed Wells Fargo to garnish the exact amounts withdrawn. Thereafter, Wells Fargo instructed Plaintiff to call Defendant.

27. For six weeks, Defendant did nothing to correct the wrongful and excessive garnishment, despite Plaintiff's attempt to address the problem. Due to Defendant's refusal to address the problem, Plaintiff had to retain an attorney to reverse the garnishment.

28. Defendant did not take any action to correct the wrongful garnishment until after Plaintiff's attorney filed a notice of motion and motion to vacate the default judgment and quash the garnishment.

29. On or about August 7, 2007, Defendant finally returned $2,066.03 to Plaintiff's bank account.

*Summary*

30. The above-detailed conduct by Defendant in an effort to collect this debt, represents a violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), 1692f(5), and 1692f(6), among others, and Minnesota's wrongful garnishment statute, Minn. Stat. § 571.90.

31. Plaintiff has suffered actual damages as a result of Defendant's illegal conduct in the form of anger, anxiety, emotional distress, fear, frustration, humiliation, embarrassment, amongst other negative emotions.

## Trial by Jury

32. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed. R. Civ. P. 38.

## Count 1:
## Violations of the Fair Debt Collection Practices Act
## 15 U.S.C. §§ 1692-1692o

33. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

34. The foregoing intentional and negligent acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692-1692o.

35. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## Count 2
## Wrongful Garnishment
## Minn. Stat.. § 571.90

36. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

37. The foregoing acts and omission of Defendant constitute a violation of Minn. Stat. § 571.90.

38. As a result of Defendant's violation of Minn. Stat. 571.90 Plaintiff is entitled to actual damages, statutory damages in the amount of $100.00, and reasonable attorney's fees and costs from Defendant.

## Prayer for Relief

**Wherefore**, Plaintiff prays that judgment be entered against Defendant for:

(a) statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

(b) actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

(c) costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

(d) statutory damages of $100 pursuant to Minn. Stat. § 571.90;

(e) actual damages pursuant to Minn. Stat. § 571.90;

(f) costs of litigation and reasonable attorney fees Minn. Stat. § 571.90; and

(g) such other and further relief as this Court determines just and proper.

**Samuel J. Glover & Associates, LLC**

Date: 4.17.2008          _____
                        Samuel J. Glover (#327852)
                        2021 East Hennepin Avenue, Suite 195
                        Minneapolis, MN 55413

                        phone • 612.424.3770
                        fax • 612.605.1947
                        e-mail • sam@sjglover.com

                        *Attorney for Plaintiff*

## Verification

**Kiara Gallagher,** being duly sworn on oath, depose and says that she is the Plaintiff in this action; that she makes this verification on her own behalf; being duly authorized to do so; that she has read the foregoing Complaint and knows the contents thereof, and that the same is true to her knowledge, except as to those matters stated on information and belief, and as to those matters she believes them to be true; that the grounds for her knowledge and belief is information derived from her books and records, or written instruments in her possession.

Date: 4-17-08

Kiara Gallagher

Subscribed and sworn to before me this 17 day of April, 2008.

Notary Public

CHRISTOPHER SEAN WHEATON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2012

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                                    FOURTH JUDICIAL DISTRICT

Cavalry Portfolio Services, LLC.,

                    Plaintiff,

vs.                                                   **STIPULATION AND
                                                      CONFESSION OF JUDGMENT**

Kiara K. Gallagher,

                    Defendant.

      **WHEREAS**, defendant was served with a Summons and Complaint on May 9, 2005; and

      **WHEREAS**, defendant **admits, acknowledges and confesses** that the sum of Four Thousand Three Hundred Thirty-Eight and 45/100 Dollars ($4,338.45), plus interest at the rate of Six and 00/100 percent (6%) per annum from and after April 29, 2002, plus service costs in the amount of Thirty and 00/100 Dollars ($30.00), are actually and justly **owing** by defendant to plaintiff; and,

      **WHEREAS**, plaintiff and defendant hereto desire to amicably resolve the above-captioned matter.

      **NOW, THEREFORE**, it is hereby **stipulated and agreed** by and between the parties hereto as follows:

      1. That defendant shall pay to plaintiff, through its attorney at the office of THE GURSTEL LAW FIRM, P.A., 401 North Third Street, Suite 590, Minneapolis, Minnesota 55401, the sum of Four Thousand and 00/100 Dollars ($4,000.00); provided, however, that the aforesaid sum of Four Thousand and 00/100 Dollars ($4,000.00) shall be paid by payment and receipt as follows:



With the first payment of Two Thousand and 00/100 ($2,000.00) due on or before November 15, 2005, and continuing at the rate of Two Hundred and 00/100 Dollars ($200.00) per month on or before 15th day of each month for a period of ten (10) months.

2. That should defendant default in any payment in any given month, plaintiff shall be allowed to take default judgment against defendant for the sum of Four Thousand Three Hundred Thirty-Eight and 45/100 Dollars ($4,338.45), plus interest at the rate of Six and 00/100 percent (6%) per annum from and after April 29, 2002, plus service costs in the amount of Thirty and 00/100 Dollars ($30.00), together with plaintiff's costs and disbursements incurred, less any payments previously made hereunder.

3. That such default may be obtained ex parte by the filing of an Affidavit by plaintiff's attorney setting forth the default and the balance then due and owing, and serving a copy of said Affidavit upon counsel for defendant or, if defendant has no counsel, upon defendant at defendant's last known address and filing with the Court Administrator said Affidavit, together with Proof of Service.

4. That upon payment in full of the amount set forth above, plaintiff will dismiss its action against defendant with prejudice.

5. That the foregoing settlement is the entire settlement between the parties.

**Cavalry Portfolio Services, LLC.**

BY: _/s/ signature_
Svetlana Denekamp (#325478)
THE GURSTEL LAW FIRM, P.A.
Attorneys for Plaintiff
401 North Third Street, #590
Minneapolis, MN 55401
Telephone: 612-664-8200

DATED: 10/21/05

**Kiara K. Gallagher**

BY: _/s/ signature_
Kiara K. Gallagher
~~20- 2ND ST NE #601~~ 700 Douglas Ave. #509
Minneapolis MN 55413
Telephone: 952/239-3611

DATED:

# VERIFICATION

STATE OF MINNESOTA    )
                     ) ss.
COUNTY OF HENNEPIN

_Kiara Gallagher_, being first duly sworn upon oath deposes and says that she is the defendant in the above-entitled action; that she has read the foregoing Stipulation and Confession of Judgment, knows the contents thereof, and that the same is true and correct.

_____
Kiara K. Gallagher

Subscribed and sworn to before me
this 14th day of November, 2005.

_____
Notary Public

AVIS D. ROBERSON
Notary Public
Minnesota
My Commission Expires Jan. 31, 2008

Our File No. 115815

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT<br>Case type: 14 – other civil |
| Cavalry Portfolio Services, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Kiara K. Gallagher,<br><br>Defendant. | Court file no. 27-cv-07-10876<br>Judge Kevin Burke<br><br>**Affidavit of Kiara Gallagher** |

STATE OF _New Jersey_ )
                     ) ss.
COUNTY OF _Burlington_ )

Kiara Gallagher, of the City of Minneapolis, county of Hennepin, in the State of Minnesota, being duly sworn, deposes and states as follows:

1. I am the defendant in the above-captioned lawsuit.

2. I make this affidavit in support of my Motion to Vacate Judgment and Quash Garnishment.

3. In February 2005, I contacted Cavalry to try to clear up the debt in this lawsuit. It took me 15 phone calls to Cavalry before they even found my account. I never refused to pay, but kept calling Cavalry to find out what I needed to do to clear the debt.

4. I believe this debt came from a credit card account I opened while in college. The account had a maximum limit of $1,000.

5. In May 2005, I was contacted by The Gurstel Law Firm, P.A. (along with Gurstel, Staloch & Chargo, P.A., "**Gurstel**"), regarding the debt.



Exhibit B

6. I called Gurstel shortly afterwards and spoke with Svetlana Denekamp. I tried to offer a settlement, but Denekamp told me I had to pay the balance in full or file a "counter-petition," which was necessary to proceed.

7. About two months after the first letter I received from Gurstel, Gurstel served me with a summons and complaint.

8. I answered the summons and complaint and requested validation of the debt. Gurstel provided several statements from a MBNA credit card account I thought was probably mine.

9. I talked to Gurstel several more times and spoke with Denekamp, but received no help or explanation, just an insistence that I file a "counter-petition." Denekamp repeatedly accused me of refusing to pay, even after I did serve an answer and even though I was offering to settle for an amount I could afford.

10. Money was a problem for me at the time, since my father had just been diagnosed with cancer in November 2005, and I was helping to care for him.

11. Gurstel finally offered me a settlement for $4,000 in eleven payments: a down payment of $2,000 followed by ten payments of $200. I accepted, and signed the attached stipulation and confession of judgment.

12. I made the payment of $2,000 on time and made the first nine payments of $200 on time.

13. I did not make the final payment because I miscalculated the amount I already paid and thought I had paid the settlement in full.

14. Because of the wording of the stipulation, I thought I only had to make ten payments, total, not eleven.

15. Also, at the time the final payment came due, I was going through a very difficult period of my life. My father was terminally ill with cancer. He died on January 31, 2007.

16. I was very close to my father, and needless to say, I was very upset during his sickness and as a result of his death. I had a difficult time focusing on things like personal finance.

17. I called Gurstel in December. The person I spoke with said they had not received my payment of $200 for September 2006. I told her that I believed I already satisfied the terms of our payment arrangement.

18. I received the attached affidavit of default in May 2007, but there was no court file number on the cover letter or documents, and I received no notice that Cavalry's attorney was filing the documents with the Court.

19. I was not given notice that Cavalry had obtained a judgment against me.

20. If I had known the affidavit was filed with the Court or if I had received a copy of the default judgment, I would have acted more quickly to deal with this.

21. I was never given a copy of the judgment obtained by Cavalry or given an opportunity to pay it.

22. The first notice I had of the judgment was when my bank account was emptied.

23. I was not given notice of the garnishment or a copy of the garnishment summons until after the money was taken out of my bank account.

24. I found out my account had been garnished on July 17, 2007, when I checked my account balance. I was given a number to call by Wells Fargo.

25. I called the number, which was for Gurstel, and talked to a woman named Sharlin, who claimed she had spoken with me in December. I told her I had mistakenly miscalculated my payments and thought I had paid the full $4,000 until I recognized my accounting error. I also said there was no way I owed the $4,153.36 that was withdrawn from my account.

26. I asked Sharlin how it could be legal for them to take over $4,000 from my account and left me with nothing. I asked her how I was supposed to live with no money. She laughed at me cruelly and said it was perfectly legal.

27. I called Gurstel again on July 20th and spoke with Sharlin once more. I told her that the numbers on the garnishment notice did not seem right. I told her that the total balance due was incorrect and that none of the numbers correlated to the amount taken from my account. I told her I was charged overdraft fees and I expected them to compensate me for those fees.

28. She asked for the amount that was on hold, and I told her it was almost $4,200. She said they were only holding $2,300 and that I should call my bank.

29. I did call my bank, which told me Gurstel asked them to hold exactly what they were holding, and that I needed to call Gurstel.

30. Attached are true and correct copies of the following documents:
    Exhibit A:   Letter dated March 3, 2005, from Simone Suri of Gurstel.
    Exhibit B:   Summons and Complaint (undated).
    Exhibit C:   Answer and Counterclaim, dated May 29, 2005.
    Exhibit D:   Letter dated July 13, 2005, from Svetlana Denekamp of Gurstel, with account statements attached.

Exhibit E:   Stipulation and confession of judgment, which I signed on November 14, 2005.

Exhibit F:   Letter dated October 4, 2006, from Michael Johnson of Gurstel.

Exhibit G:   Affidavit of default of Michael Johnson, dated May 17, 2007, with cover letter (attached stipulation and confession of judgment omitted since it is attached separately as exhibit E).

Exhibit H:   Wells Fargo deposit holds summary, dated July 17, 2007.

Exhibit I:   Letter from Wells Fargo dated July 17, 2007 showing debit against my account of $2,353.63 and a bank fee of $75.

Exhibit J:   Letter from Wells Fargo dated July 17, 2007 showing debit against my account of $1,724.73.

Exhibit K:   Garnishment Summons mailed to me on July 17, 2007, showing an unpaid balance of $2,139.66.

Exhibit L:   Garnishment Summons mailed to me on July 17, 2007, showing an unpaid balance of $1,908.94.

Subscribed and sworn to before me this 6th day of August, 2007.

_____          _____
Kiara Gallagher                  Notary Public

TAMMY JO-ANN KOEHL
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires September 1, 2010