**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kiara Gallagher,

        Plaintiff,

v.

Gurstel, Staloch & Chargo, P.A.,

        Defendant.

Civil No.:  08-cv-001189-PJS-RLE

**DEFENDANT GURSTEL, STALOCH &
CHARGO, P.A.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

---

## <u>FACTS</u>

On March 2, 2005, Defendant Gurstel, Staloch & Chargo, P.A. (GSC) was retained by Cavalry

Portfolio Services, LLC to represent it in the collection of an unpaid credit card debt from the Plaintiff,

Kiara Gallagher.  The original creditor of the debt was MBNA.  (Michael Johnson Aff. ¶ 2)  On March

3, 2005 an initial demand letter was sent to Ms. Gallagher that included the required language under the

Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.  (Michael Johnson Aff. ¶ 3) No

response to the initial letter was received and a lawsuit was served upon Ms. Gallagher on May 9, 2005.

Ms. Gallagher answered the complaint on May 29, 2005. (Michael Johnson Aff. ¶ 4).

Ms. Gallagher and GSC engaged in numerous settlement discussions and eventually reached an

agreement whereupon Ms. Gallagher would pay $2,000.00 immediately and then 10 monthly payments

of $200.00.  After sending 9 of the 10 payments, Ms. Gallagher failed to make the 10th payment.

(Michael Johnson Aff. ¶ 5)  GSC contacted Ms. Gallagher numerous times and requested the final

payment, but she failed to send it.  (Michael Johnson Aff. ¶ 6)  Because the Plaintiff defaulted from the

settlement agreement, GSC submitted to the court on May 17, 2007, an affidavit of identification, an

affidavit of default, a proposed order for judgment, along with the executed stipulation and confession of

judgment.  The Plaintiff's payments were properly credited to the amount owed in the affidavit of identification and the proposed order.  Due to a clerical error, her payments were not noted in the affidavit of default.  (Michael Johnson Aff. ¶ 7)  However, this error did not cause the Plaintiff any harm because the proposed order that Defendant submitted to the court accurately included the Defendant's payments.  Judgment was entered on May 27, 2007 in the amount of $2,139.08.  (Hennepin County Court File 27-CV-07-10876).

In order to collect upon the unpaid judgment, a garnishment was sent to Wells Fargo Bank on July 16, 2007.  Pursuant to that garnishment, Wells Fargo froze $2,353.63.  A second bank garnishment was sent to Wells Fargo, on July 16, 2007.  Unbeknownst to GSC until August 7, 2007, the second garnishment froze an additional $1,724.73.  (Michael Johnson Aff. ¶ 8)

On July 17, 2007, Ms. Gallagher contacted GSC and claimed that more than the judgment amount had been frozen.  Ms. Gallagher did not provide any proof to support her claim and she hung up on the GSC representative. (Charlynn Garcia Aff. ¶ 3-6)  Ms. Gallagher recorded the phone conversation and a copy of that conversation was disclosed through discovery.  That same day, GSC contacted Wells Fargo and was informed that only $2,353.63 was being held. (Kim Handschke Aff. ¶ 4-5)  Wells Fargo sent GSC a disclosure stating that it was only holding $2,353.63.  (Kim Handschke Aff. ¶ 6, Ex. A )  Based upon the information provided by Wells Fargo, GSC reasonably believed that Wells Fargo was only holding $2,353.63.

On August 7, 2007, GSC received Ms. Gallagher's motion to vacate the Hennepin County judgment.  Prior to filing that motion, the Plaintiff failed to provide proof that the second bank garnishment froze any funds.  On August 7, 2007, GSC contacted Wells Fargo Bank for a second time to verify how much was being held.  (Kim Handschke Aff. ¶ 7)  Wells Fargo Bank informed GSC for the first time on August 7, 2007 that the second garnishment had frozen an additional $1,724.73.  (Kim

Handschke Aff. ¶ 8)   That same day, GSC released the excess funds back to Ms. Gallagher.  (Michael Johnson Aff. ¶ 9).

GSC offered to refund Ms. Gallagher any overdraft fees she incurred as a result of the inadvertent second garnishment.  (Michael Johnson Aff. ¶ 10).  In response to GSC's offer to refund Ms. Gallagher's overdraft charges, Mr. Glover disclosed that Ms. Gallagher incurred $102.00 in charges, but demanded an exploitive amount to resolve the matter.  GSC sent a $102.00 check to Mr. Glover to cover the overdraft charges.  In response, Mr. Glover returned the check with a two sentence cover letter stating that it was "unacceptable." (Michael Johnson Aff. ¶ 11)  On May 1, 2008, Mr. Glover commenced this action on behalf of the Plaintiff.

## ISSUES

I.     **Is summary judgment on Plaintiff's FDCPA claims appropriate where the facts establish that Plaintiff has failed to establish any violation of the FDCPA?**

II.    **Is GSC entitled to summary judgment on Plaintiff's FDCPA claims where Plaintiff is making an improper collateral attack upon the existing state court judgment?**

III.   **Is GSC entitled to summary judgment on Plaintiff's FDCPA claims where a violation of a state law does not constitute a violation of the Act?**

IV.    **Does the litigation privilege bar Plaintiff's claims which arise entirely out of Defendant's commencement and prosecution of the underlying judicial proceeding?**

V.     **Is GSC entitled to summary judgment on Plaintiff's FDCPA claims where any alleged violation was the result of a bona fide error?**

## DOCUMENTS RELIED UPON

1.     Plaintiff's Complaint;

2.     Affidavit of Charlynn Garcia, with attached exhibit;

3.     Affidavit of Michael D. Johnson, with attached exhibits;

> Exhibit A - Washington v. North Star Capital Acquisition, LLC, 2008 WL 4280139 (N.D. Ill).

Exhibit B - State of Minnesota v. Messerli & Kramer P.A, NO. 62-C7-04-12204, Ramsey County Minn. 2007

Exhibit C - Plaintiff's recording of phone conversation

4.      Affidavit of Kim Handschke, with attached exhibit;

Exhibit A –Wells Fargo disclosure statement

## ARGUMENT

## I.      SUMMARY JUDGMENT STANDARD

The United States Supreme Court has emphasized that courts should look favorably upon motions for summary judgment to establish the just, speedy, and inexpensive resolution of civil litigation. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). One of the principal purposes of a Rule 56 motion for summary judgment is to isolate and dispose of factually unsupported claims or defenses. The Supreme Court has instructed that the rule should be interpreted in a way that allows it to accomplish this purpose. *Id.* at 323-24.

To defeat a motion for summary judgment, the non-moving party must produce evidence that would allow a reasonable jury to return a verdict in favor of the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). The non-moving party may not rest on denials or allegations in the pleadings, but must set forth the specific facts sufficient to raise genuine issues for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. Evidence sufficient to oppose summary judgment must be in the form of sworn testimony and must be admissible into evidence. Fed.R.Civ.P. 56(e). If the evidence brought forward in opposition to the motion "is merely colorable, or is not significantly probative," summary judgment is appropriate. Wabun-Inini v. Sessions, 900 F.2d 1234, 1239 (8th Cir. 1990) (quotation omitted). In other words, "the mere existence of some alleged factual dispute between the parties is not sufficient

by itself to deny summary judgment." <u>Get Away Club, Inc. v. Coleman</u>, 969 F.2d 664, 666 (8th Cir. 1992).  "Instead, the dispute must be outcome determinative under prevailing law." *Id.*

In order to defeat a motion for summary judgment, the non-moving party must produce admissible evidence that would allow a reasonable jury to return a verdict in favor of the nonmoving party.  <u>Anderson</u>, 477 U.S. at 250-51.  The non-moving party is not permitted to rest on allegations in the pleadings, but must set forth specific facts sufficient to raise genuine issues for trial. Fed.R.Civ.P. 56(e); <u>Celotex</u>, 477 U.S. at 324.  Evidence sufficient to oppose summary judgment must be in the form of sworn testimony and must be admissible into evidence. Fed.R.Civ.P. 56(e).  Plaintiff cannot be allowed to sidestep Rule 56, which mandates that plaintiff have "admissible evidence" to support her claims.

## II.   SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH ANY VIOLATION UNDER THE FDCPA.

### A.   The Fair Debt Collection Practices Act Claims.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e); see also <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 127 (2d Cir. 2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors.") In particular, the Act's legislative history reveals that the need for the law "arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" <u>Kropelnicki</u>, 290 F.3d at 127 (quoting S. Rep. No. 95-382, at 2 (1977), reprinted in 1977

U.S.C.C.A.N. 1695, 1696). The Act tries to prevent and punish debt collection practices that are "unfair, deceptive, or harassing." Id.

However, in the case before the court, Plaintiff's counsel is abusing the fee shifting provisions of the Act to generate fees in a matter that never should have resulted in litigation. In addition, the Plaintiff attempted to entrap the Defendant by baiting one of its collectors while recording the phone conversation. As noted by several courts, the FDCPA has become a tool for abusive litigation. "Congress allowed for class actions under the Fair Debt Collection Practices Act, 15 U.S.C. sec. 1692k(a)(2)(B). No doubt some flagrant abuses by debt collectors are held in check by the collective effort of those who are abused. But the law can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme. . . . The law would be best served by challenging clear violations rather than scanning for technical missteps that bring minimal relief to the individual debtor but a possible windfall for the attorney." Bailey v. Security National Servicing Corp.,154 F.3d 384 (7th Cir. 1998). The United States District Court for the District of Connecticut in Murphy v. Equifax Check Services, Inc., 35 F. Supp. 2d 200 (USDC CT 1999) stated "There is nothing in the Act suggesting that it was intended to create a cottage industry for the production of attorney's fees." Plaintiff's lawsuit is based upon technical missteps that caused her no harm. The missteps do not rise to the level of an FDCPA violation and this case should be dismissed on summary judgment.

**1)** **GSC is entitled to summary judgment on Plaintiff's FDCPA claims because they fail to state a claim for relief.**

In paragraph nine of her complaint, Plaintiff asserts GSC violated a laundry list of provisions of the FDCPA. By analyzing each of those provisions, the abusive and frivolous nature of the Plaintiff's case becomes clear.

**a)     15 U.S.C §§ 1692d**

Section 15 U.S.C §§ 1692d provides that, "A debt collector may not engage in any

conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of a debt."  The oppressive and outrageous conduct Congress

had in mind when it passed the FDCPA was:

> [O]bscene and profane language, threats of violence, telephone calls at
> unreasonable hours, misrepresentation of a consumers legal rights, disclosing
> a consumer's personal affairs to friends, neighbors, or an employer, obtaining
> information about a consumer through false pretense, impersonating public
> officials and attorneys, and simulating legal process.
>
> Beattie v. D.M. Collections, Inc., 754 F.Supp. 383 (D. Del. 1991) (quoting S. Rep.
> No. 95 382, 95th Cong., 1st Sess., reprinted in 1977 U.S. Code Cong. & Admin.
> News 1695, 1696).

In case before the court, Plaintiff alleges that in the course of a collection call, one

of GSC's employees laughed.  GSC's employee vigorously denies she laughed at the

Plaintiff and the Plaintiff's own recording supports Ms. Garcia's affidavit.  (Garcia Aff. ¶

10).  The Plaintiff's recording fails to show any laughter and Ms. Garcia conducted

herself in a highly professional manner.  The recording was produced by the Plaintiff in

discovery is attached to the affidavit of Michael Johnson as Exhibit C.

Even if an employee of GSC had laughed during the course of a collection call, it

would not rise to the level of abusive conduct that the FDCPA was enacted to prevent.

Subsection 1692d prohibits only oppressive and outrageous conduct.  Bieber v.

Associated Collection Serv. Inc., 631 F. Supp. 1410, 1417 (D.Kan. 1986).  It is not

intended to shield even the least sophisticated recipients of debt collection activities from

the inconvenience and embarrassment that are natural consequences of debt collection.

Id.  It would be inconsistent with the language of subsection 1692d to construe the

subsection to forbid conduct that is not intended and does not naturally tend to harass, oppress or abuse.  Banning innocent laughter would raise considerable First Amendment issues and impose unnatural constraints upon a debt collector's interaction with a consumer.  Casual laughter during the course of a collection call, does not rise to the level of "oppressive and outrageous conduct" that is prohibited under the FDCPA.

**b)      15 U.S.C §§ 1692e,  1692e(2), 1692e(10)**

15 U.S.C §§ 1692e, 1692e(2) and 1692e(10) prohibit a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Presumably the Plaintiff is claiming that because the affidavit of default failed to credit her payments, GSC committed a false, deceptive or misleading representation.

As noted in GSC's statement of the facts, Plaintiff shows a lack of candor by failing to note that GSC's affidavit of identification/amount owed and its proposed order properly credited the Plaintiff for her payments.  Two of the three documents filed by GSC included the Plaintiff's payments.   GSC's clerical error failed to cause the Plaintiff any harm because the judgment amount included her payments and was not done with any malicious intent.

**c)      15 U.S.C §§ 1692e(5)**

15 U.S.C §§ 1692e(5) prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken.  Presumably the Plaintiff is claiming GSC violated this provision by issuing two bank garnishments to Wells Fargo on the same day.  As noted in GSC's statement of facts, on July 16, 2007, GSC issued two bank garnishments to Wells Fargo to collect upon the unpaid judgment.

Upon discovering Wells Fargo was holding additional funds, GSC immediately released the excess funds.

Although unusual, nothing prohibits a judgment creditor from issuing multiple bank garnishments to the same financial institution.  Under Minnesota law, when a financial institution receives a garnishment, it only freezes the funds that are in the account at the time of the garnishment.  Minnesota law does not provide for continuing garnishments, as allowed for in states such as Iowa.  A judgment debtor could hypothetically deposit funds into an account later on the same day after the account has been frozen.  Because of the increased use of direct deposits and other electronic transfers, subsequent deposits are increasingly occurring.  In order to freeze those additional funds, a judgment creditor would need to issue two garnishments in the same day.

An additional example of when a judgment creditor may need to issue two garnishments is when the funds frozen by the financial institution include exempt funds.  If the judgment debtor's account includes additional non-exempt funds, a second bank garnishment may be necessary.  Because nothing prohibited GSC from issuing multiple garnishments, it was taking an action it was entitled to take and thus it did not violate 15 U.S.C §§ 1692e(5).

**d)      15 U.S.C §§ 1692e(9)**

15 U.S.C §§ 1692e(9) prohibits a debt collector from "The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

It is unclear why Plaintiff alleges GSC violated 15 U.S.C §§ 1692e(9).  GSC issued bank garnishments on behalf of its client that complied with the Minnesota garnishment statutes and Plaintiff fails to allege otherwise.  Plaintiff fails to provide any evidence that GSC was falsely representing the nature of any document it generated in this matter.

**e)      15 U.S.C §§ 1692f, 1692f(1), 1692f(5), 1692f(6)**

15 U.S.C §§ 1692f prohibits a debt collector from using any unfair or unconscionable means to collect any debt.  15 U.S.C §§ 1692f (1) states that the collection of any amount that is not authorized is a violation.  As noted in GSC's statement of facts, Hennepin County District Court awarded judgment pursuant to the confession of judgment signed by Plaintiff.  Plaintiff is barred by the Rooker-Feldman doctrine from re-litigating before this court any dispute as to the entry of judgment or the judgment amount awarded by the Hennepin County District Court.  D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983);  Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).  The fact that a judgment was entered on the Plaintiff's default does not alter the applicability of the Rooker-Feldman doctrine.  Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1035 (8th Cir. 1999).

15 U.S.C §§ 1692f (5) prohibits a debt collector from, "Causing charges to be made to any person for communications by concealment of the true propose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees."  Plaintiff failed to put forward a single example of charges that she incurred from GSC's communications.  GSC's telephone communications with the Plaintiff on July 20, 2007 were initiated by the Plaintiff and GSC cannot be held responsible for the manner in which the Plaintiff chooses to contact it.

15 U.S.C §§ 1692f (6) prohibits a debt collector from "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if;

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

The underlying debt in this matter was an unsecured MBNA credit card.  No security interests were involved or enforced by GSC.  In addition, the freezing of the Plaintiff's bank account was done pursuant to a garnishment that was an authorized judicial remedy for the unpaid judgment.

## III.    PLAINTIFF FAILS TO STATE A CAUSE OF ACTION PURSUANT TO MINNESOTA STATUTE § 571.90.

### A.    Plaintiff is Making a Prohibited Collateral Attack

Levy and garnishments are "subsequent proceedings" which are ancillary to and part of the action that gives rise to a judgment.  Under the Minnesota statute § 571.90, if a creditor acts in bad faith in the course of issuing a garnishment, it may be held liable for $100.00, actual damages, costs and attorney's fees.  Minn. R. Civ. P. 11.02 and 11.03 also provide remedies to a party that has been harmed by any bad faith conduct.  These provisions under Minnesota law provide the appropriate remedy if harm is alleged via the supplementary proceedings.

Plaintiff is not entitled to commence a secondary action based upon the supplementary proceedings in the underlying judgment.  A judgment is final and conclusive to the rights and obligations of the parties in an action or proceeding.  Minn. R. Civ. P. Rule 54.01.  Any allegations of wrong doing during the course of the original litigation or supplementary proceedings must be resolved within the existing Minnesota state court action.  Even when a collateral attack is appropriate, it must be directly upon the judgment itself and not collaterally

through another action.  Fidelity & Deposit Co. v. Riopelle, 216 N.W.2d 674 (Minn. 1974).  The

Plaintiff's attempt to use Minn. Stat. § 571.90 to create a cause of action in a separate Federal

Court action is an impermissible collateral attack upon the prior judgment entered in State court.

### B.       GSC Did Not Act in Bad Faith.

Even if Plaintiff were allowed to make a collateral attack, she fails to establish that GSC

acted in bad faith.  Because GSC issued the garnishments post-judgment, Plaintiff must establish

bad faith on the part of GSC in order to recover under Minn. Stat. § 571.90.  GSC readily admits

that it usually does not issue multiple bank garnishments to the same financial institution on the

same day.  However, nothing prohibited GSC from sending two garnishments on the same day.

In addition, Plaintiff has failed to put forward any facts showing malicious intent by GSC.  Bad

faith requires intentional conduct that is greater than a clerical error.  Upon learning that Wells

Fargo was holding additional funds, GSC immediately requested the funds be released and

offered to compensate the Plaintiff for any overdraft fees.  (Johnson Aff. ¶ 10).  Because Plaintiff

cannot establish bad faith on the part of GSC, she is unable to establish a cause of action under

Minn. Stat. § 571.90.

### C.       Violations of State Laws Do Not Create a Pre Se FDCPA Violation.

Even if Plaintiff were able to establish a violation of a Minnesota law, it would not create

a per se violation of the FDCPA or give rise to a federal cause of action.  "The FDCPA was

designed to provide basic, overarching rules for debt collection activities; it was not meant to

convert every violation of a state debt collection law into a federal violation."  See Carlson v.

First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004).  Citing the Carlson decision, the

court in Washington v. North Star Capital Acquisition, LLC, 2008 WL 4280139 (N.D. Ill),

stated, "The FDCPA should not be used as a way to piggy back one's claims into federal court."

(A copy of the unpublished decision in <u>Washington</u> is attached to the Johnson Aff. as Ex. A).  If the Plaintiff has any cause of action against GSC for the supplementary proceedings, those claims must be resolved through the existing state court judgment and not through a separate federal court action.

In <u>Dalsoren v. Olsen</u>, 125 N.W.2d 36 (Minn. 1963), the Minnesota Supreme Court refused to recognize a cause of action for wrongful garnishment.  The court in <u>Dalsoren</u> held that a party was estopped from asserting a cause of action for wrongful garnishment because the appropriate remedy was through statute.  In the case before the court, the Plaintiff is attempting an end run around this prohibition by piggy backing an alleged violation of Minn. Stat. § 571.90 upon the FDCPA.  The FDCPA does not usurp the State court's jurisdiction over supplemental proceedings, nor does it create a back door cause of action for wrongful garnishment.

## IV.   PLAINTIFF'S CLAIMS ARISING OUT OF DEFENDANT'S CONDUCT IN THE UNDERLYING COLLECTION ACTION ARE BARRED BY THE LITIGATION PRIVILEGE.

The United States Supreme Court has held that the common law provides "absolute immunity from subsequent damages for liability for all persons – government or otherwise – who [are] integral parts of the judicial process."  <u>Briscoe v. LaHue</u>, 460 U.S. 325, 336 (1983).  The immunity protects all participants in litigation, including parties, witnesses, counsel, jury, and judge.  *Id.* at 335.  Also see <u>Mahoney & Hagberg v. Newgard</u>, 729 N.W.2d 302, 306 (Minn. 2007).

Although the majority of assertions of absolute privilege decided by Minnesota Courts have involved claims of defamation, the Ramsey County District Court recently concluded that privilege also extends to non-defamatory conduct of an attorney in a judicial proceeding.  (*See* August 24, 2007 Order of William H. Leary III, <u>State of Minnesota v. Messerli & Kramer, P.A.,</u>

Case File No. 62-CV-04-12204.)  (A copy of Judge Leary's August 24, 2007 Order is attached to

the Johnson Aff. as Ex. B.)  In that case, Judge Leary applied the privilege to the Plaintiff's

claims that the defendant law firm (1) allegedly failed to acknowledge, or to acknowledge in a

timely manner, property exempt from garnishment and levy, and (2) allegedly failed to provide

proper affidavits for an award of attorneys' fees.  In applying the litigation privilege, the Court

noted that all of the conduct occurred during, or was related to Court proceedings, that to subject

an attorney to liability under the circumstances would unduly interfere with the practice of law

and the exercise of zealous advocacy.

> All conduct occurred during, and were related to, Court proceedings.  The first allegation pertains to conduct that may range from inattentive to intentional. The second allegation pertains to conduct that may range between advocacy and avarice.  Whatever the explanation from case to case, to subject an attorney to a potential lawsuit any time such conduct is alleged would unduly interfere with the practice of law, from the decision to undertake representation to the exercise of zealous advocacy.  There is no discernible difference between protecting the defamatory statements of an attorney during litigation and protecting the attorney conduct alleged in this case.  In fact, defamatory statements are arguably more egregious than the conduct alleged here, which involves the timeliness of a law firm's response to exemption claims and the adequacy of an affidavit under a Court rule. . . .

(August 24, 2007 Order, p. 38)

Courts in other states, faced with similar lawsuits by Plaintiffs attempting to create

FDCPA or various state law claims against collection attorneys, have applied the litigation

privilege to dismiss the very type of claims asserted here.  For example, the Supreme Court of

Florida held that letters written by a law firm in advance of foreclosure proceedings were

protected by the litigation privilege.  Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,

950 So.2d 380 (Fla. 2007).  The Florida Court was faced with the same issue presented here –

does the litigation privilege apply beyond the classic context of defamation and libel type claims.

The Florida Court squarely held that the litigation privilege does apply and then broadly applied

the privilege to all torts.  The same result was consistent with what had been established in

Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell P.A. v. United States Fire Ins. Co., 639

So.2d 606, 608 (Fla. 1994).  There it was held that immunity was properly afforded to "any act

occurring during the course of judicial proceeding, regardless of whether the act involves a

defamatory statement or other tortious behavior -- . . .  so long as the act has some relation to the

proceeding."  Id.

    Adequate remedies exist for alleged misconduct in a judicial proceeding, most notably

the trial court's contempt power, as well as the disciplinary measures of the state court system

and bar association.  Echevarria, McCalla, Raymer v. Cole, 950 So.2d 380, 384 (Fla. 2007), cited

in Minnesota v. Messerli & Kramer, P.A., at *38.  Allowance of a secondary action based on

allegations from the state district court case would unfairly hinder the advocacy of creditors'

attorneys and prejudice their clients.

    The Plaintiff's case is based upon the affidavit of default and the issuance of

garnishments by GSC in its capacity as counsel for Cavalry Portfolio Services, LLC.  This

conduct was in the course of the litigation over the Plaintiff's unpaid debt.  GSC was required to

be a zealous advocate for its client and failing to commence supplementary proceedings could be

construed as a violation of that duty.  Minn. R. Prof. Con., Preamble ¶ 2. ("As advocate, a lawyer

zealously asserts the client's position under the rules of the adversary system.")  The signing of

an affidavit and the commencement of post-judgment proceedings were commenced within the

context of a court proceeding and falls within GSC's duty of advocacy.  Therefore, the conduct

alleged in Plaintiff's Complaint is protected by the litigation privilege, and GSC is entitled to

summary judgment.

**V.      DEFENDANT'S ACTIONS WERE BONA FIDE ERRORS.**

Debt collectors are not liable for damages under the FDCPA if they commit a violation without intent and as a result of a "bona fide error."  15 U.S.C. § 1692k(c) (2003).  Section 15 U.S.C. § 1692k(c) of the FDCPA provides specifically as follows:

> (c) Intent
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The bona fide error defense is meant to protect debt collectors from FDCPA claims when they act in "good faith, inadvertent[ly], without fraud and deceit, and with faithfulness to one's duty or obligation."  Wilhelm  v. Credico, Inc., 426 F.Supp.2d 1030, 1037 (citing Bynum v. Cavalry Portfolio Servs., L.L.C., No 04-CV- 0515-CVE-PJC, 2006 WL 850935, *4 (N.D. Okla. Mar. 30, 2006)).

The purpose of the bona fide error defense is to protect debt collectors from inadvertent clerical errors, such as the error alleged in this case. Martinez v. Albuquerque Collection Services, 867 F. Supp. 1495, 1502 (D.N.M. 1994); Bieber v. Associate Collection Services, 631 F. Supp. 1410, 1416 (D. Kan. 1986).  "The bona fide error defense does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."  Wilhelm, 426 F.Supp.2d at 1037 (citing Ross v. RJM Acquisitions Funding, L.L.C., No. 04 C 6557, 2006 WL 752953, *7 (N.D. Ill. Mar. 16, 2006)).

Defendant's failure to include the Plaintiff's payments in the affidavit of default clearly falls under the bona fide error rule.  Defendant's paralegals are diligently trained to include any payments when drafting an affidavit of default. (Johnson Aff. ¶ 13).  In addition, prior to signing any document, Defendant's attorneys are to review the document for accuracy.  (Johnson Aff. ¶ 14).  Due to an innocent clerical error, these policies and procedures were not properly followed.

However, the payments were properly applied on the affidavit of identification/amount owed and the proposed order properly credited the Plaintiff for her payments.

Defendant vigorously denies any violation of the FDCPA occurred in this matter. However, if it is determined a violation occurred, it was the result of an innocent error in which there were reasonable procedures in place to avoid the error.

## **CONCLUSION**

For the foregoing reasons, Defendant Gurstel, Staloch and Chargo, P.A. respectfully requests that the Court grant their motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

Dated:  December 22, 2008                    **/s/  Michael D. Johnson**_____
                                                              Michael D. Johnson
                                                              Bar Number 031044X
                                                              Attorney for Defendant
                                                              Gurstel, Staloch & Chargo, P.A.
                                                              6681 Country Club Drive
                                                              Golden Valley, MN 55427
                                                              Telephone:  763-267-6845
                                                              Fax:  763-267-6777
                                                              m.johnson@gurstel.com